## PICTORIAL PRINTING CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4171.

Circuit Court of Appeals, Seventh Circuit.
Feb. 28, 1930.

Paul E. Shorb, of Washington, D. C., for petitioner.

F. Edward Mitchell, of Washington, D. C., for respondent.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

Concededly the right to take proceedings for the determination, assessment, and collection of appellant's 1916 tax terminated February 28, 1922, and when, a year and a half thereafter, the revenue officers appeared at appellant's place of business to investigate that return, there was no longer any right to institute any proceedings looking to the determination, levy, or collection of any further tax for that year.

When the revenue officer then presented the waiver or consent for signature, the taxpayer had no liability on account of the tax for 1916; and when appellant was informed in effect that unless it was signed an emergency assessment would immediately be made and collected to protect the Government against possible deficiencies, the taxpayer, not knowing that the limitation had expired, signed it, evidently under the persuasive prospect of being required to pay at once, in advance of any investigation, whatever amount the Commissioner might demand to be paid.

As respects the tax for 1916, with which alone we are here concerned, the parties did not deal on equal terms. The threat of immediate assessment and collection in advance of investigation, to protect the Government against a possible deficiency which at that time the Government had no right to determine or levy, in our judgment so far partook of the nature of a duress as to render a waiver or consent so procured wholly inoperative as to that year.

But, apart from this, there is the question whether, in general, a statutory consent

for determination of a tax, entered into after expiration of the period of limitation, upon proceedings for redetermination, assessment, or collection, has any validity. The Board of Tax Appeals held in its opinion in this case that such a consent was binding upon the taxpayer, and that a deficiency found thereunder was valid and collectible. Among others of the Board's opinions, there was cited in support Joy Floral Co., 7 B. T. A. 800. It appears that upon review of that case by the Court of Appeals of the District of Columbia, that court reversed the decision of the Board, and held that such consent for extension was not effective if entered into after the period of limitation had expired. Joy Floral Co. v. Commissioner, 58 App. D. C. 277, 29 F.(2d) 865. This decision was followed in Spear & Co. v. Heiner, Collector (D. C. Pa.) 34 F.(2d) 795; and by the District Court for the Middle District of Tennessee in Columbia Iron Works v. Brock, Collector, 38 F.(2d) 816, September 28, 1929. But in a more recent case, in the United States Court of Claims, Stange v. United States, November 4, 1929, a decision was reached in conformity with the views of the Board of Tax Appeals in its Joy Floral Company decision.

For the reasons stated in the said opinion of the Court of Appeals of the District of Columbia, and in the above-cited cases in which it was followed, we are of opinion that the correct rule was there announced, and that the Commissioner takes nothing by a consent first entered into after the limitation had expired.

■ This consent or waiver presents still another question. It was unlimited in its terms; whereas it is conceded that, under the applicable statutes, the consent should be for a limited time. The Board of Tax Appeals, in its opinion herein, concludes that such a consent is binding "for a reasonable time," stating, "if we had only the first waiver before us we could not hold, on the evidence, that the time elapsed between its execution and the final determination was unreasonable.".

If it be assumed that the Board is right in holding such unlimited waiver effective for a reasonable time, was a period of two and one-fourth years after August 13, 1923, reasonable under the record facts? At the time the taxpayer signed the consent six and one-half years had already passed since the return for 1916 was made, and at the very time of signing it revenue agents were engaged in investigating the taxpayer's books.

In the Commissioner's "thirty-day" letter of January 26, 1924, it was stated that deficiencies were found for the years 1913 to 1918, and still the letter announcing the redetermination of the 1916 tax was not sent until nearly two years thereafter. At no time did appellant make any protest in regard to the merits of the alleged 1916 deficiency, and no controversy was pending respecting that year's tax whereby delay was occasioned. Under these circumstances, we cannot agree to the conclusion that unreasonable delay in making the determination does not appear from this record; but, on the contrary, from what is shown we conclude that the delay was decidedly unreasonable.

■ As to the second consent, dated February 2, 1924, which was almost six months after the first, we deem it fair to say that even if the first consent was effective for a reasonable time, then, under the circumstances pointed out, with the revenue agents on the ground and no protest or opposition made to redetermination for 1916, a reasonable time had already expired when the second consent was given.

But we believe the record fairly shows that the second consent, although in terms including the year 1916, did not in fact intend to include it, and ought not to be so considered. The Commissioner's letter which inclosed it stated that deficiencies had been found for the years 1913 to 1918. The 1918 taxes were not included in the first consent, which covered only the years 1910 to 1917. In the Commissioner's letter inclosing the second consent, after stating that deficiencies had been found for the years 1913 to 1918 inclusive, it was stated: "If in your opinion the additional tax indicated for the year 1918 is incorrect and you submit a protest against the action taken by this Unit, or an appeal to the Commissioner of Internal Revenue, it is necessary that you properly execute the enclosed form of waiver so that the additional tax indicated may not be placed in jeopardy."

This refers alone to the 1918 tax, which the prior consent did not cover, and sufficiently indicates that the purpose of this consent was to extend the time for the 1918 tax alone, leaving the others to stand upon the prior consent, which was applicable to all the years from 1910 except 1918.

■ Of course, with the first consent inoperative, the second, even if held to cover the year 1916, would not justify the determination of November 9, 1925, since the second

consent, by its limitation of one year, expired February 2, 1925.

The decision of the Board of Tax Appeals is reversed, and the cause is remanded with direction to sustain the taxpayer's appeal.